Argued at Pendleton May 7, affirmed June 11, rehearing denied June 25, 1918.

# DAVIDSON *v.* MADDEN.

(173 Pac. 320.)

**Trial—Instructions—Responsiveness to Issues.**

1. The refusal of instructions requested upon the assumption that a chattel mortgage executed by defendant's partner to plaintiff was invalid because it attempted to hypothecate an undivided half interest in partnership property to secure an individual debt was not error, where defendant's liability was predicated upon another contract.

**Contracts—Contract to Pay Another's Debt—Consideration.**

2. An agreement whereby one partner took over all of the other's interest in the partnership property, agreeing to pay the other's personal debts, to which the plaintiff creditor assented, was valid; the inducement being sufficient to uphold it.

**Appeal and Error—Verdicts—Conflicting Evidence.**

3. The jury's determination from conflicting evidence that defendant took over all the partnership property under an agreement to pay his partner's debt to plaintiff must be considered final.

**Contracts—Nonsuit—Variance—Consideration.**

4. That a complaint charged that in consideration of plaintiff's forbearance to foreclose his mortgage on defendant's partner's partnership interest defendant agreed to pay the amount of a certain note secured by chattel mortgage, and plaintiff testified he did not agree to postpone foreclosure, did not render denial of nonsuit erroneous, where judgment for plaintiff could rest on other considerations.

**Appeal and Error—Harmless Error.**

5. That an instruction on one partner's agreement to assume the personal debts of another improperly refers to taking and accepting "the sheep," instead of "an undivided half interest in the sheep," *held* harmless error.

89 Or.—14

Contracts—Rights of Action—Contract for Benefit of Third Persons.

.6.    Where a person as full or part consideration for an executed contract, promises another to assume, pay or discharge some legal debt due from such other to a ·third person, the latter, though a stranger to the consideration and not an immediate party to the contract, may maintain an action thereon if the agreement was made directly or primarily for his benefit.

[As to promises for the benefit of third persons, see notes in 3 Am. Dec. 305; 9 Am. Dec. 155; 35 Am. St. Rep. 269; 71 Am. St. Rep. 178.]

From Gilliam: DAVID R. PARKER, Judge. ·

In Banc.

This is an action by L. P. Davidson against John Madden to recover money. The complaint alleges in effect that on November 9, 1910, the defendant's brother, New Madden, executed to the plaintiff a promissory note for $3,000, payable upon demand with interest from date until paid at the rate of 10 per cent per annum; that in order to secure the payment of the note, the maker thereof, at the time it was given, also executed a chattel mortgage of his undivided half interest in a band of 1,700 ewes and lambs, then marked with the letter V having a short horizontal bar across it; that the mortgage was duly recorded the day it was' executed in Gilliam County, Oregon, where the sheep were then kept; that on March 21, 1911, New Madden made a contract with the defendant, whereby the latter stipulated to purchase such undivided half interest in the sheep, subject to the mortgage thereon; that thereafter the defendant promised and agreed to assume and pay plaintiff the amount of such promissory note, and in consideration of the latter's consent to New Madden's transfer of such interest in the flock to the defendant, and in further consideration of the plaintiff's forbearance to foreclose his mortgage, the defendant assumed and promised to pay the amount of the note to the plaintiff; that as a` part of the same

transaction, New Madden bargained, sold and delivered his undivided half interest in the sheep to the defendant, who accepted such property and took possession thereof, and as a part of the purchase price then assumed and agreed to pay the amount of the promissory note to the plaintiff; that thereafter such sheep were sold, transferred, became lost, or died, and the lien of the mortgage thereon was rendered nugatory by the acts of the defendant; that the note long since matured but no payments have been made thereon except $609 November 9, 1910, and $500 October 10, 1915. Judgment was demanded for the remainder due on the note. After the complaint was filed another payment of $200 was made on the debt.

The answer denied some of the averments of the complaint and for a further defense substantially alleged that about November 1, 1909, the defendant paid an indebtedness of $2,665.58, which New Madden then owed for the purchase of 725 ewes and 612 lambs, that were marked as stated in the complaint, which sheep then embraced the entire flock then owned by New Madden; that about November 1, 1909, the defendant added to such band then belonging to his brother 283 ewes and 11 bucks marked by a "spur heel"; that on such date in order properly to care for the combined flocks, New Madden and the defendant entered into a partnership agreement, by the terms of which the profits and losses were to have been equally shared, after the payment to the defendant of the sum of $286.50 out of the first year's profits derived from the business; that New Madden was to devote his entire time and attention to the care and management of the sheep while the defendant was to look after the financial part of the venture; that pursuant to such partnership, additions were made to the band of sheep,

the wool obtained therefrom was sold from time to time until March 17, 1915, when the remainder of the proceeds of all sales of sheep, lambs, bucks and wool was finally divided and paid over to the respective parties; that about Nevember 10, 1910, without the knowledge, consent or authority of the defendant, New Madden, in order to evidence his personal indebtedness, gave the promissory note described in the complaint, and to secure the payment of such instrument, he executed a chattel mortgage of the sheep and lambs which were partnership property; and that the defendant at no time, individually or as a partner, ever agreed to become a party to the note or mortgage, and whatever payments have been indorsed upon the note were made by New Madden.

The material allegations of new matter in the answer having been denied by the reply, a trial was had resulting in a verdict and judgment for the plaintiff as prayed for in the complaint, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. D. N. Mackay* and *Mr. T. A. Weinke,* with an oral argument by *Mr. Mackay.*

For respondent there was a brief over the name of *Messrs. Shanks & Horner,* with an oral argument by *Mr. C. R. Horner.*

MOORE, J.—1, 2. Exceptions having been duly saved, it is maintained by defendant's counsel that errors were committed in denying their requests to charge the jury as follows:

1. "I instruct you that a partnership is under no obligation for the individual debts of its members, and

hence a partner cannot use the firm assets to pay his individual debts without their consent, nor can he pledge the firm credits for such debts.''

2. ''I further instruct you that a partner's interest in the partnership property is only his proportionate share of what remains after the payment of the partnership debts. He has no such distinct interest in any distinct parcel of the partnership property as enables him to pledge it for his own debts. Such interest in a part of the firm assets is too remote and indeterminate to admit of its being conveyed as security or otherwise.''

If the language thus employed affords a correct statement of the rules of law which are applicable in some classes of cases, it is difficult to understand how these requested instructions are important in this instance. If it be assumed that the chattel mortgage which was executed by New Madden to the plaintiff was invalid because it attempted to hypothecate an undivided half interest in partnership property, to secure the payment of an individual debt of one of the partners, without the knowledge or consent of his associate in business, a subsequent agreement by these persons that in consideration of New Madden's surrender to John Madden of all his interest in the sheep, the defendant agreed to pay New Madden's debts, and the plaintiff assented to such agreement, the inducement to the contract was sufficient to uphold it: *Baker & Smith* v. *Eglin*, 11 Or. 333 (8 Pac. 280); *Feldman* v. *McGuire*, 34 Or. 309 (55 Pac. 872).

3. The defendant's motion for a judgment of nonsuit was denied, but we understand the question thus involved relates to the alleged invalidity of the chattel mortgage for the reason stated, and not to any lack of proof on the part of the plaintiff to substantiate the averment of the complaint, to the effect that for the

consideration stated the defendant assumed and agreed to pay New Madden's debts. Though the defendant, as a witness, denied that he ever agreed to undertake the payment of any of the indebtedness due from his brother, the testimony of the plaintiff is to the contrary. Davidson's testimony is corroborated in many particulars by that of other witnesses. From this dispute the jury determined the issue in favor of the plaintiff, and their conclusion must be accepted as the final arbitrament of the matter.

4. It will be remembered that the complaint charged that in further consideration of the plaintiff's forbearance to foreclose his mortgage, the defendant assumed and agreed to pay the amount of the promissory note secured by the mortgage. The plaintiff testified that he never agreed to postpone the enforcement of the lien upon the sheep and lambs, though no action was instituted on the defendant's alleged engagement to pay the indebtedness until about six years after the interest in the mortgaged property is alleged to have been assigned to him. The testimony so adverted to does not render the denial of the motion for a judgment of nonsuit erroneous, for the final conclusion that was reached herein can well rest upon the averment in the complaint that in consideration of New Madden's transfer of his undivided half interest in the sheep and lambs to the defendant, the latter assumed and agreed to pay the mortgage debt.

5. An exception having been taken to the following instruction it is insisted by defendant's counsel that an error was committed in giving it:

"If you find from a preponderance of all the evidence that the defendant John Madden took the sheep after New Madden, the mortgagor, had told him he could do so by paying certain indebtedness of said New Madden, including the indebtedness to L. P. Davidson

as represented by the balance then due on the promissory note of New Madden, and if you further find that John Madden accepted the sheep with that understanding, in that event I instruct you that John Madden, the defendant, would be liable for the amount of the indebtedness covered by this note, and your verdict should be for the plaintiff.''

It is admitted that the sheep and lambs described in the mortgage were partnership property, of which John Madden as a partner owned an equal undivided interest. The defendant was therefore in possession of the entire flock, as much so as New Madden. The part of the instruction last quoted substantially states that if the jury found the defendant ''took'' the sheep after New Madden had told him he could do so, and if it was further found that John Madden ''accepted'' the sheep pursuant to his agreement to pay the indebtedness mentioned, then a verdict should be returned for the plaintiff, improperly refers to taking and accepting the sheep, when that part of the charge should have alluded to the taking and accepting of the remaining undivided half interest in these animals, since prior thereto the defendant had taken possession of and was with New Madden holding the entire band of sheep. Though a verbal inaccuracy is to be found in the language employed in the instruction thus challenged, it is believed the jury were not misled thereby and clearly understood the meaning intended to be conveyed. No objection is to be found in the brief of defendant's counsel to the terms so used.

6. The rule is established in Oregon that where a person as a full or part consideration for an executed contract, promises another to assume, pay or discharge some legal debt or obligation due from such other to a third person, the latter, though a stranger to the

consideration and not an immediate party to the contract, may maintain an action thereon if the agreement was made directly or primarily for his benefit: *Hughes* v. *Oregon Ry. & Nav. Co.,* 11 Or. 437 (5 Pac. 206); *Schneider* v. *White,* 12 Or. 503 (8 Pac. 652); *Chrisman* v. *State Ins. Co.,* 16 Or. 283 (18 Pac. 466); *Parker* v. *Jeffery,* 26 Or. 186 (37 Pac. 712); *Washburn* v. *Interstate Inv. Co.,* 26 Or. 436 (36 Pac. 533, 38 Pac. 620); *Young Men's Christian Assn.* v. *Croft,* 34 Or. 106 (55 Pac. 439, 75 Am. St. Rep. 568); 48 Cent. L. J. 455; *Feldman* v. *McGuire,* 34 Or. 309 (55 Pac. 872).

In the case at bar New Madden's transfer of his undivided partnership interest in and to the mortgaged sheep and lambs to John Madden, was a sufficient consideration for the latter's agreement to assume and pay his brother's indebtedness to the plaintiff, who can legally maintain an action thereon.

It follows that the judgment should be affirmed and it is so ordered.     AFFIRMED.   REHEARING DENIED.