Argued May 4, decided May 26, rehearing denied August 11, 1908.

# READY v. SCHMITH.

[95 Pac. 817.]

SPECIFIC PERFORMANCE—EVIDENCE OF PART PERFORMANCE—CONTRACT
TO CONVEY LAND.

1. Evidence in a suit for specific performance of a parol contract to
convey real estate considered, and *held* to show part performance of the
agreement sufficient to take the case out of the statute of frauds.

FENCES PARTITION FENCE—RIGHTS AND LIABILITIES OF OWNERS.

2. Sections 4351-4353, B. & C. Comp., provide that if any person neglects
to keep up a partition fence or the part thereof which he ought to main-
tain, and upon proper notice refuses to renew it, the party interested
may make the necessary repairs, and thereupon recover the value of the
improvement in an action against the delinquent. *Held*, that an owner
of land may secure an interest in a fence separating his land from that
of another, by the payment of one-half of the value of the fence, without
the execution of a deed, and a person whose duty it is to maintain a part
of a partition fence, can be compelled to pay for the making of his share
of the necessary repairs, and an action can be maintained against him
even in the absence of an express covenant to make the repairs.

COVENANTS—COVENANTS RUNNING WITH THE LAND—COVENANTS IMPOS-
ING EXPENSE—MAINTENANCE OF PARTNERSHIP FENCE.

3. If a half-interest in a partnership fence is transferred to one of ad-
joining landowners, but the other adjoining landowner and the grantor
stipulated for himself, his heirs and assigns, to make the necessary re-
pairs, such covenant would probably run with the land, and could be en-
forced by the party entitled to the performance.

SPECIFIC PERFORMANCE—PROCEEDINGS—CONDITIONS PRECEDENT—TEN-
DER OF CONSIDERATION.

4. Plaintiff agreed to transfer to defendant, an adjoining landowner,
one-half interest in a fence on the line between them. Defendant agreed
in consideration for such transfer, to transfer to plaintiff an acre of land.
*Held*, in the absence of an agreement to transfer an interest in the fence
by deed, that plaintiff could bring suit for the specific performance of de-
fendant's agreement to transfer the acre of land, without tendering to
defendant a deed of the interest in the fence.

APPEAL—OBJECTIONS NOT TAKEN IN LOWER COURT—OBJECTIONS TO
PLEADINGS.

5. An allegation in a reply denying "each and every material allega-
tion of the new matter set up in defendant's answer except so far as the
same agrees with the allegation of the complaint," although objection-
able as an attempt on the part of plaintiff to determine what facts are
material, must be objected to in the trial court or the objections cannot
be considered on appeal, as under Section 72, B. & C. Comp., only objec-
tions which involve the jurisdiction of the court, or that the complaint
does not state a cause of action, can be considered on appeal, if objec-
tion is not made in the trial court.

From Wallowa: THOMAS H. CRAWFORD, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by J. B. Ready against Henry Schmith to enforce the specific performance of a parol contract to convey real property. The facts are, that the defendant is the owner of lot 1, section 4, township 5 north, range 45 east of the Willamette meridian, in Wallowa County, and the plaintiff owns 40 acres of land which joins such lot on the south. The parties hereto, about October 1, 1904, made an oral agreement whereby the defendant, in consideration of securing a half interest in a fence owned by the plaintiff, stipulated to convey to the latter, a tract of land 20 rods east and west, and 8 rods north and south, from the southwest corner of such lot, and to execute to him a deed therefor when the premises should be released from the lien of a mortgage. The fence mentioned is built on the north boundary of the plaintiff's land, and extends east thereof and nearly across a 40-acre tract which lies immediately south of other lands owned by the defendant. That part of the fence extending east of the plaintiff's premises is slightly deflected to the south. It was agreed that the maintenance of the fence should be equally borne by the parties. The plaintiff was permitted to take possession of the land specified, upon which he erected a barn and made other improvements. He also constructed across his land another fence a short distance south of, but parallel with, his north boundary. The defendant joined his fences to such boundary fence, a part of which he reset. The mortgage specified having been discharged, the defendant was requested to execute a deed of the land agreed to be conveyed, but he refused to comply therewith, whereupon this suit was instituted, the complaint stating the facts in substance as hereinbefore detailed. The answer admits the making of the contract and avers, in effect, that the plaintiff stipulated to execute to the defendant a deed to a half interest in the fence; that he would move the east part of it north to the defendant's

boundary and keep half of the entire line in repair; that the defendant has been ready, able, and willing to perform his part of the agreement, but the plaintiff failed to move such part of the fence or to maintain any of it, and to compel the defendant to bear the entire expense of making the repairs, the plaintiff built a fence just south of the boundary; and that he also failed to tender to the defendant any written evidence of a transfer of the title to a half interest in such fence. The reply denies the material allegations of new matter in the answer, upon which issues the cause was tried, resulting in a decree as prayed for in the complaint, and the defendant appeals.    MODIFIED AND AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. O. M. Corkins.*

For respondent there was a brief over the names of *Burleigh & Boyd,* with an oral argument by *Mr. James A. Burleigh.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The testimony shows that the second fence built by the plaintiff forms, with the fence on his north boundary, a lane nearly identical with an old trail which extends across his premises, and that he had permitted his neighbors to drive their cattle along such path. The plaintiff, referring to the reason assigned by the defendant for his refusal to convey the premises agreed upon, testified as follows:

"Because I put up a fence and made a lane and let stock go through, and because I didn't shut up the trail and allow nobody to go through there, he would not make the deed."

This witness further testified that nothing was ever said about his resetting the fence, or in relation to his executing a deed to a half interest therein, that no demand was ever made upon him to make such a deed; that by oral agreement he delivered a half interest in the fence

to the defendant, who took possession thereof and thereafter used it; that he intended to give the defendant a half interest in the entire fence, and also stated:

"Under the terms we were both to keep up the fence."

Frank Ready, the plaintiff's son, in speaking of the reason given by Schmith for repudiating his agreement, testified that the defendant told the plaintiff he would not convey the land specified, because the latter had permitted people to go back and forth with their stock along the trail across his premises, that if a deed should be made he feared the plaintiff would remove the boundary fence, and that the defendant did not request any writing to evidence a transfer thereof. The defendant, in speaking of the terms of the agreement, testified as follows:

"I says to Mr. Ready, 'I will let you have an acre of ground if you will let me have a half interest in this fence.' He says, 'All right; I'll do that.' I says, 'There is part of that fence I want swung back to keep your stock from getting into my field and mine from getting into yours'; and he didn't give me any answer, and that's the way it stood ever since."

In referring to a conversation this witness had with the plaintiff he further said:

"He asked me if I had made a deed for this acre of ground. I says, 'No.' He says, 'Why didn't you?' I says, 'Mr. Ready, I want to know first what I am going to get for my acre of ground before I make out a deed.' He says, 'You can have this fence.' 'Well,' I says, 'I want it drawed up in writing in regard to this fence.' "

The defendant on cross-examination was asked in reference to his agreement with the plaintiff the following question:

"Now, as I understand your direct testimony, when you had this conversation where you staked out the ground to him, in that conversation there was nothing said about a writing of any kind from him to you? That was afterwards?"

To which the witness replied:

"I don't think he talked about any writing at all. He might have. I would not say we did. Just went to work and staked off the ground and measured it, and I think we had our minds made up about that. I don't know exactly whether we did or not."

A careful examination of the testimony given at the trial leaves no doubt in our minds as to the validity of the contract to convey the land particularly described, or as to the plaintiff's part performance of the terms of the parol agreement sufficient in equity to take the case out of the statute of frauds; and the only question to be determined is whether or not a deed of the specified interest in the fence should have been tendered to the defendant as a condition precedent to the right to maintain this suit.

2. Our statute provides, in effect, that whenever a boundary fence of another's land is used by an adjacent owner as a part of his inclosing fence, such bordering proprietor must pay the former one half of the value of the appropriated part. Section 4351, B. & C. Comp. If any party neglect to keep up such partition fence, or the part thereof which he ought to maintain, and upon proper notice refuses to renew it (Section 4352), the party interested may make the necessary repairs, and thereupon recover, in an action against the delinquent, the value of the improvements thus made. Section 4353. It will thus be seen from an inspection of the law referred to that, though a partition fence may be treated by the owner thereof as a fixture, an interest therein can be secured in the manner indicated by the payment of one half of the value of the fence, and evidently without the execution of a deed for that purpose. It will also be observed that the party whose duty it is to maintain a part of a partition fence can be compelled to pay for the making of his share of the necessary repairs, in case he fails or refuses to perform his obligation in this

respect, and that an action can manifestly be maintained for that purpose, even in the absence of an express covenant to make the repairs.

3. In the cases thus supposed the right of action is based on the statute. The plaintiff's agreement to maintain his part of the fence could undoubtedly be enforced in an action to recover his share of making the necessary repairs, if he fails or refuses to keep or perform this part of his contract, the terms of which would afford the measure of the remedy. If a half interest in the fence had been transferred to the defendant by a deed in which the plaintiff stipulated for himself, his heirs and assigns, to make the necessary repairs, such covenant would probably run with the land, and could be enforced by the party entitled to the performance. *Brown* v. *Southern Pac. Ry. Co.*, 36 Or. 128 (58 Pac. 1104: 47 L. R. A. 409: 78 Am. St. Rep. 761).

4. A deed of that character would have been more efficacious than the oral transfer and acceptance thereof; for a parallel fence having been built, the lane thus formed could be opened to the public as a highway, and by the conveying of plaintiff's land to another person, the latter might abandon all interest in the boundary fence, and thus possibly impose upon the defendant the entire expense of keeping up the repairs. The consequences thus assumed, however, were not anticipated by the parties, who never agreed that a deed of the specified interest in the fence should be executed. The plaintiff, therefore, was not obliged to tender to the defendant a sealed instrument evidencing a transfer of such interest in the fence as a condition precedent to the right to maintain this suit.

5. It is maintained by defendant's counsel that the pleadings admit that the plaintiff was to move a part of the fence north to the boundary line, and, as the testimony shows that he has not performed this part of his agreement, an error was committed in decreeing a

specific performance of the parol contract. The answer alleges that the plaintiff was to move a part of the fence as stated. The reply applicable to this averment is as follows:

"Denies each and every material allegation of the new matter set up in defendant's answer, except so far as the same agrees with the allegations of the complaint."

In *Kabat* v. *Moore*, 48 Or. 191 (85 Pac. 506), referring to Section 77, B. & C. Comp. as amended (Laws 1903, p. 205), Mr. Chief Justice BEAN criticises such form of pleading by saying: "It may be doubted whether, under this statute, a reply merely denying each and every 'material' allegation of the answer is a good denial, for a plaintiff ought not to assume to himself to determine what facts are material, and thus render a conviction for perjury for a false verification difficult or impossible." The Supreme Court of this State is organized to correct errors committed by the trial courts to which exceptions have been duly reserved. In the presentation of causes questions necessarily arise, which, owing to the haste incidental to a trial, must be determined after only a moment's consideration. If the action of a court in such respects is challenged, its conclusions can be reviewed at leisure on appeal, and a precedent may thus be established for future government; but unless the legal principle is called to the attention of the trial court by objection and exception, its action is not subject to re-examination, excepting only in cases involving its jurisdiction and that the complaint does not state facts sufficient to constitute a cause of action. Section 72, B. & C. Comp. The notice of the court appears never to have been attracted to the defect in the reply, and as such imperfection might have been waived, and does not come within the exception specified in the statute, no error was committed as alleged.

Believing that the testimony fully warrants a specific performance of the terms of the parol agreement, the

defendant is required within 30 days from the entry of the mandate herein in the lower court, to execute to the plaintiff a bargain and sale deed to the acre of land particularly described in the complaint, transferring a title to the premises free from all incumbrances made or permitted by him; the deed to recite that it is given in consideration of a transfer by the plaintiff to the defendant, of an undivided half of the entire fence specified, and also pursuant to the plaintiff's agreement to maintain and repair his share of the fence, which latter stipulation is only personal, and not a covenant running with the land. If the defendant fails or refuses to execute the deed within the time specified, this order is to operate as and for the conveyance. With this modification the decree is affirmed.          MODIFIED AND AFFIRMED.